```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
JOHN C. COOKE,
                                                                 MEMORANDUM AND ORDER
                    Plaintiff,                                   12-CV-1672 (FB)

        -against-

CAROLYN W. COLVIN,
 Acting Commissioner of Social Security,

                    Defendant.
------------------------------------------------------------x
```

*Appearances:*                                          *For the Defendant:*
*For the Plaintiff:*                                    LORETTA E. LYNCH, ESQ.
FRANCESCA ZELTMANN, ESQ.                                United States Attorney
Pasternak Tilker Ziegler Walsh Stanton                  KATHLEEN A. MAHONEY, ESQ.
& Romano                                                Assistant United States Attorney
1325 Franklin Avenue, Suite 250                         Eastern District of New York
Garden City, NY 11530                                   271 Cadman Plaza East
                                                        Brooklyn, NY 11201

**BLOCK, Senior District Judge:**

Plaintiff John C. Cooke seeks review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for benefits under the Social Security Act (the "Act").[1] Both parties move for judgment on the pleadings. Cooke seeks a remand solely for the calculation of benefits, or alternatively for further administrative proceedings. For the reasons set forth below, the case is remanded for further proceedings.

**I.**

When Cooke was 15 years old, he was hit by a car and injured his leg and knee. In 1982, Cooke started working on the New York Stock Exchange. He worked there until 2002,

---

[1]On February 14, 2013, Carolyn W. Colvin became the Acting Social Security Commissioner. The Clerk of the Court is directed to substitute Colvin as the named defendant pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure.

when his brokerage firm was taken over. On June 9, 2010, he applied for disability insurance benefits. After the Social Security Administration denied his application, he requested a hearing before an Administrative Law Judge ("ALJ").

The ALJ concluded that Cooke had not been disabled from June 1, 2007, the alleged onset date, through December 31, 2009, the last date insured. Applying the familiar five-step process, the ALJ found that: (1) Cooke had not engaged in substantial gainful activity during the relevant period; (2) his right knee osteoarthritis secondary to a prior tibia fracture with varus deformity and joint degeneration qualified as a severe impairment, while his asthma, mild degeneration of the lumbar spine, panic attacks, agoraphobia,[2] diabetes, and fecal incontinence did not; (3) his impairments did not meet the criteria listed in 20 CFR Part 404, Subpart P, Appendix 1; (4) Cooke was "unable to perform any past relevant work," AR at 23,[3] and (5) "there were jobs that existed in significant numbers in the national economy that [he] could have performed," AR at 24.[4] The last two steps were based on the ALJ's finding that, through the last date insured, Cooke had the residual functional capacity ("RFC") to "perform sedentary work as defined in 20 CFR § 404.1567(a)," though "his ability to complete a full range of sedentary work is reduced by the limitation that he must only do work that

---

[2]The ALJ inconsistently refers to agyrophobia (an extreme fear of crossing streets) and agoraphobia (intense fear and anxiety, especially in situations where it is hard to escape or get help). Since the record cited by the ALJ mentions agoraphobia, *see* AR at 185, the Court presumes that this is the applicable impairment.

[3]All citations to "AR" are to the Administrative Record.

[4]The burden of proof is on the claimant in the first four steps, but it shifts to the Commissioner at the fifth step. *See* 20 C.F.R. §§ 404.1560(c)(2), 416.920(b)-(g); *Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003); *Shaw v. Chater*, 221 F.3d 126, 132 (2d Cir. 2000).

consists of simple unskilled tasks." AR at 17.

The Appeals Council denied Cooke's request for review, rendering the Commissioner's decision to deny benefits final. Cooke timely sought judicial review.

**II.**

"In reviewing the final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision." *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Cooke challenges the ALJ's disability determination, arguing that the Commissioner erred by (1) violating the treating physician rule, and (2) failing to conduct a proper credibility analysis.

**A.     The Treating Physician Rule**

Under the treating physician rule, "the opinion of a claimant's treating physician as to the nature or severity of the impairment is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory or diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (quoting 20 C.F.R. § 404.1527(d)(2)). If an ALJ refuses to give controlling weight, he must consider certain factors in deciding how much weight to give, including "(I) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a

3

specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion." *Halloran*, 362 F.3d at 32; *see also* 20 C.F.R. § 404.1527(d)(2). "Failure to provide 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand." *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999).

Dr. Jonathan Gordon, Cooke's orthopedic surgeon, examined him on May 3, 2011, and opined that he was "totally disabled." AR at 195. He indicated that Cooke was post-right-knee arthroscopy, that conservative treatment of injections and physical therapy had failed, and that Cooke needed a total knee replacement. He also noted that Cooke was limited to 20 minutes of sitting or standing; cannot lift, carry, pull, or push; cannot do work that involves climbing, balancing, stooping, kneeling, crouching, or crawling; and must avoid exposure to hazards, extreme temperatures, wetness, humidity, and vibration. The ALJ provided ten reasons for according "only slight weight" to his opinion, AR at 22-23; however, these reasons are inaccurate, improper, or too weak to support the ALJ's determination.

Three of the reasons have been disproved by material submitted to the Appeals Council. First, the ALJ questioned whether a treating relationship existed since the record only included one examination; however, the supplemental materials confirm four other examinations. Second, the ALJ found it unclear, in the absence of arthroscopy records, whether the surgery was exploratory or for repair. Yet the records submitted to the Appeals Council refer to the surgery as an "operative intervention," which removed excess membrane and treated degenerative changes. AR at 207. Third, the ALJ speculated that Dr. Gordon's referral of Cooke to another doctor for knee arthroplasty "strongly indicates that whatever Dr. Gordon's practice area entails, it does not include the performance of knee arthroscopy" and

4

that "[t]herefore, Dr. Gordon may not be qualified to determine the appropriateness of such surgery." AR at 22. This rationale is unfounded since Dr. Gordon *did* perform the surgery.

Three other reasons are also flawed. Without providing any details, the ALJ concluded that Dr. Gordon's examination "do[es] not support the severity of the limitations." AR at 22. The ALJ next found that Dr. Gordon's failure to provide certain information "makes it impossible to ascertain" if the limitations "are merely for the short period necessary to recover from the surgery or are ongoing." AR at 22. No such uncertainty existed, however, since the opinion stated that "conservative post-op therapy treatments have failed—[Cooke] needs total knee replacement." AR at 198. The ALJ thus erred by "arbitrarily substitut[ing] his own judgment for competent medical opinion," *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998), and "reject[ing] a treating physician's diagnosis without first attempting to fill any clear gaps in the administrative record," *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999). The ALJ likewise erred by discrediting Dr. Gordon's opinion due to the possibility that he "express[ed] an opinion in an effort to assist a patient with whom he . . . sympathizes" or to satisfy Cooke's demand and avoid tension—without citing any evidence to support such a motive. AR at 23; *see McDowell v. Colvin*, 11–cv–1132, 2013 WL 1337152, at *10 (N.D.N.Y. Mar. 11, 2013) ("[T]he ALJ's suggestion that Dr. Kang provided a false or exaggerated assessment . . . out of sympathy and/or a desire to avoid tension . . . amounted to a challenge to [his] professional integrity [and] should not have been made in the absence of concrete supporting evidence.").

The ALJ properly noted that the treating physician rule does not require deference to Dr. Gordon's ultimate conclusion that Cooke is disabled because the "ultimate finding of whether a claimant is disabled and cannot work" is an issue reserved to the

5

Commissioner. *Snell*, 177 F.3d at 133. This exception, however, only justifies the ALJ's refusal to defer to the ultimate disability conclusion and not to the clinical findings and opinions.

The ALJ provided other reasons that, though correct on their face, fail to provide adequate support for giving only "slight weight" to Dr. Gordon's opinion. The ALJ noted that another doctor's recommendation for physical therapy and home exercises "tends to refute Dr. Gordon's opinion that [Cooke] has such extreme limitations," AR at 23, and that Dr. Gordon "clearly did not have an opportunity to review all of the medical evidence of record" since he indicated that physical therapy was unsuccessful whereas Cooke once reported it to be helpful, AR at 22. Though relevant, this inconsistency is not enough to support the major conclusion drawn by the ALJ. Dr. Gordon may reasonably have reached a different opinion than Cooke as to the benefits of physical therapy based on his medical expertise. In addition, the ALJ's labeling of Dr. Gordon's opinion as "premature," AR at 23, because another doctor had not yet evaluated the effectiveness of physical therapy is inapposite since the issue is whether Cooke was disabled in 2009, not in the month following Dr. Gordon's assessment.

After rejecting the improper and inaccurate reasons, the Court is left with insufficient support for the ALJ's determination—particularly in the light of the evidence consistent with Dr. Gordon's findings, such as (1) the opinion of Dr. Robert Lippe, an orthopedic surgeon, that Cooke's condition warrants a total knee replacement; (2) an MRI that found prominent osteoarthritic changes, intra-articular loose bodies, widening of the medial joint space compartment, chronic tears of the medial meniscus and anterior cruciate ligament with degenerative thickening, and joint effusion; and (3) the finding of Dr. David Drucker, another orthopedic surgeon, that Cooke suffered from "severe incapacitating knee pain" even

6

after surgery, AR at 219.[5] Accordingly, because the ALJ did not provide good reasons for discounting Dr. Gordon's opinion, remand is necessary. Upon remand, the ALJ should reassess Cooke's RFC and Dr. Gordon's opinion in light of all of the material submitted. The ALJ should also re-contact Dr. Gordon to resolve any relevant inconsistencies or ambiguities.

B.     **Evaluation of Subjective Complaints**

Cooke next contends that the ALJ improperly discredited his statements about his symptoms and limitations. To evaluate the credibility of a claimant's subjective complaints, the ALJ must first determine whether the claimant has a medically determinable impairment that could reasonably be expected to produce his symptoms, and second evaluate the intensity, persistence, and limiting effects of those symptoms. *See* 20 C.F.R. § 404.1529(b)-©. The ALJ must provide "specific reasons for the finding on credibility, supported by the evidence in the case record." SSR 96–7. When a claimant's subjective complaints suggest a greater severity than can be shown solely by objective medical evidence, the ALJ must consider other relevant factors, including the claimant's daily activities, the intensity of the symptoms, and treatment received. 20 C.F.R. § 404.1529(c)(3).

The ALJ found that although Cooke's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," his "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they

---

[5]The Commissioner contends that the ALJ appropriately gave little weight to Dr. Gordon's opinion since it was not determinative of Cooke's condition at the time that his insured status ended. Since the ALJ did not discount Dr. Gordon's opinion on this basis, the Court cannot affirm on this ground. *See Snell*, 177 F.3d at 134 ("A reviewing court 'may not accept appellate counsel's *post hoc* rationalizations for agency action.'" (quoting *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962))).

are inconsistent with the above residual functional capacity assessment." AR at 20. Although the ALJ stated that "there is no way to verify these alleged limitations on daily living with any reasonable degree of certainty," AR at 20, the ALJ may not discredit subjective complaints solely due to a lack of objective support. *See Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979). Here, the ALJ did add that "even if [Cooke's] daily activities are truly as limited as alleged, the weak medical evidence makes it difficult to attribute that degree of limitation to [his] medical condition, as opposed to other reasons." AR at 20. The ALJ also noted inconsistencies in Cooke's reporting of why he stopped working and when his condition started to prevent him from working. Despite the alleged onset date of June 1, 2007, the earliest record is from October 26, 2009, in which Cooke reported experiencing severe pain only for the past few days. The ALJ also noted that Cooke received only conservative treatment in 2009. Moreover, the ALJ observed that Cooke's complaints were "quite vague" and that there was evidence of exaggeration. AR at 20.[6] The ALJ noted that Cooke's reporting that his pain fluctuated between 5 and 8 (on a 10-point scale) conflicted with his assertions of constant disabling pain.

In providing these reasons for discrediting Cooke, the ALJ applied the proper legal standard. Nevertheless, because this Court finds that the ALJ improperly discounted the opinion of Cooke's treating physician in determining his RFC, the ALJ must also reconsider his credibility. The ALJ determined that Cooke's subjective complaints were not credible to the extent they were inconsistent with the RFC assessment and that the impairment could not be expected to cause the full extent of symptoms alleged. But once the ALJ reconsiders the

---

[6]For example, despite his agoraphobia, he worked, golfed, walked, and traveled prior to his knee problems. Even with his knee problems, he went on a long road trip.

medical evidence, it may support Cooke's complaints.[7] Accordingly, after the ALJ reassesses Dr. Gordon's opinion and obtains additional information as needed to resolve any inconsistencies or ambiguities, the ALJ must reassess Cooke's credibility.

## III

For the foregoing reasons, the Commissioner's motion is denied. Cooke's motion is granted to the extent that this matter is remanded to the Commissioner for further proceedings consistent with this opinion.

**SO ORDERED.**  /s/ Judge Frederic Block

FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
June 5, 2013

---

[7]For example, the ALJ discredited Cooke partially due to the conservative treatment but Dr. Gordon opined that Cooke was "nonresponsive to conservative measures." AR at 207.